Michele Anderson-West (9249)
Austin B. Egan (13203)
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com
austin@stavroslaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH-CENTRAL DIVISION

| | |
|---|---|
| JENIFER PETERSEN,<br><br>      Plaintiff,<br>v.<br><br>MARKETSTAR CORPORATION,<br><br>      Defendant. | **COMPLAINT**<br><br>(JURY DEMAND)<br><br>Case No. 1:20-cv-00107<br>Magistrate Judge Dustin B. Pead |

Plaintiff Jenifer Petersen, by and through her undersigned counsel, hereby submits this Complaint against MarketStar Corporation ("MarketStar") and for causes of action, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jenifer Petersen is a resident of Weber County, State of Utah. At all times relevant to this Complaint, Ms. Petersen was employed by MarketStar Corporation.

2. Defendant MarketStar Corporation is a for-profit foreign corporation doing business in Weber County, State of Utah.

3. Petersen has exhausted administrative remedies having filed a charge of discrimination and retaliation with the Utah Labor Commission Antidiscrimination and Labor

1

Division and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Dismissal and Notice of Right to Sue dated June 4, 2020.

4. This action is timely commenced within 90 days of Petersen's receipt of the Dismissal and Notice of Right to Sue.

5. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted, at all times relevant herein, in the course and scope of their employment with and for Defendant.

6. This Court has jurisdiction pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f) ("Title VII") for claims arising from the actions of Defendant in violation of Title VII.

7. The employment practices alleged to be unlawful were committed in Weber County, State of Utah, which is within the jurisdiction of the United States District Court for the District of Utah, Central Division. Accordingly, venue is proper pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1391.

8. At all times relevant to this Complaint, MarketStar was an "employer" within the meaning of title VII, 42 U.S.C. §2000e(b).

9. At all times relevant hereto, Defendant employed more than fifteen (15) employees in the State of Utah.

## FACTUAL ALLEGATIONS

10. At all times relevant hereto, Petersen was employed by MarketStar as a Human Resource Generalist.

11. As set forth in more detail herein, during her employment, Petersen was subjected to sexual harassment and discrimination and ultimately retaliated against because of her complaints of sexual harassment and discrimination.

12. Petersen is female.

13. Petersen was hired by and reported directly to Josh Lopez, Vice President of Human Resources.

14. Petersen became the subject of harassment from Lopez, who initiated the harassment through repeated texts and phone calls he made to Petersen's personal cell phone at all times of day, including after work hours and on the weekends. Petersen responded to her Boss' texts and calls in fear of losing her job if she did not respond.

15. As time progressed, Lopez's texts and phone calls became more aggressive, more frequent and included sexually charged comments, innuendos, and invitations toward Petersen, which were unwelcome and made Petersen feel uncomfortable, threatened, and humiliated. For example, on a regular basis, Petersen's Boss asked Petersen for details about her sex life; told Petersen about his sex life; asked Petersen to move in with him; asked Petersen to take trips with him; asked Petersen to do things on the weekends; asked Petersen to go to the gym with him and told her she was getting fat; told Petersen that she should let him get her pregnant and then name the baby after him.

16. On or around February 9, 2019, Lopez called Ms. Petersen after hours and told Ms. Petersen to "fuck the gay out of [co-worker]" and told her "if anyone can do it, you can." After the phone call, Lopez sent Petersen a text with a GIF from the movie <u>Broke Back Mountain</u> with a caption saying "[Co-worker's] cool. Just do him and be done with it."

3

17. Fed up and secure with her employment, Petersen met with Senior Vice President Jessica Dixon, who was Lopez's direct supervisor. During the meeting, Petersen did not go into the specifics of the content of the texts and phone calls-but reported Lopez was sexually harassing her through texts and phone calls. Petersen asked Dixon to speak with Lopez and ask him to stop contacting Petersen other than for work. Dixon promised Petersen she would "look into it."

18. The next day, Lopez called Petersen into his office and shut the door. He then proceeded to yell at her for about one hour. Yelling such things as "you have no skills," "you need to find a job that you can actually do," and "no one here likes you." Lopez's statements stunned and shocked Petersen because she had always been told she was an excellent employee. For example, in March 2017, Ms. Petersen earned her first performance raise of $2,500.00. In September 2017 Ms. Petersen earned a second performance raise of $2,500.00. In October 2018, Ms. Petersen earned her third performance raise of $5,000.00.

26. Petersen became very upset, crying, shaking and inconsolable and took the next three (3) days off work. When Petersen returned on February 19, 2019, Ms. Petersen met with Ms. Dixon again and told her about the retaliatory meeting she had with Lopez. Dixon, again promised to "look into it."

27. Dixon did not follow MarketStar's policies or procedures, to the extent they existed, and did not investigate Petersen's complaints of Lopez and the retaliation continued.

28. Lopez took away Ms. Petersen's routine duties. Lopez stopped inviting Petersen to important weekly meetings which she had attended since she started working for Defendant. Petersen was made to work overtime and do mundane tasks that had not previously been part of

her job description.  Petersen was reprimanded on a daily basis for things which other employees did and received no reprimands.  Lopez gave Ms. Petersen more work and set unreasonable expectations for job completion. Lopez made Ms. Petersen take a drug test and sent her home for a week without pay-even though the drug text came back negative as Lopez knew it would.

29.     When Petersen returned to the office on April 30, 2019, she scheduled another meeting with Dixon.  During the meeting, Petersen reported Lopez's continuing and escalating harassment. Petersen also told Dixon about the over 3,000 sexually charged texts and over 471 calls she received from Lopez often received late at night and on the weekends.  In response, Dixon said, "oh Fuck" and again promised to "look into it."

30.     Unable to work under the hostile and retaliatory employment conditions, Petersen scheduled an appointment to meet with Dixon's boss, Senior Vice President Justin Nalder. Petersen told Nalder she reported sexual harassment and retaliation to Dixon two times without recourse.  Petersen told Nalder that Lopez had sent her over 3,000 texts and called her over 471 times.  Peterson told Nalder that the texts and calls were not about work and were of an increasing sexual nature.  In response, Nalder told Petersen that he "did not believe Josh Lopez would "say or do" the things Ms. Petersen reported.  Nalder also told Petersen that he "would look into her allegations and get back with her."

31.     Petersen never heard from Nalder again.

32.     Lopez terminated Petersen's employment shortly thereafter. In furtherance of creating a hostile work environment and to embarrass and humiliate Petersen, Lopez told Petersen he expected her to continue working for the next thirty (30) days.  During that time,

5

Lopez, *inter alia*, made Petersen plan a company picnic-to which Petersen would not be allowed to attend.

33. Petersen had an emotional and physical breakdown as a result of the actions of Defendant for which she sought medical treatment. Petersen continues to seek medical treatment for the emotional distress perpetrated by Lopez with Defendant's knowledge.

## FIRST CAUSE OF ACTION
### Sexual Harassment in Violation of Title VII

34. Petersen hereby incorporates as though restated herein each of the factual allegations set forth in the preceding paragraphs of the Complaint.

35. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the basis of sex in the enjoyment of all benefits, privileges, terms, and conditions of employment.

36. MarketStar knew or reasonably should have known that Lopez was engaging in the unlawful and offensive behavior alleged above and sexually harassed and discriminated against Petersen.

37. MarketStar had a duty to maintain a workplace free from sexual harassment and retaliation.

38. Notwithstanding such duty, MarketStar failed to take sufficient actions to maintain a workplace free from harassment and retaliation and failed to implement and enforce an effective sexual harassment policy.

39. MarketStar's failure to enforce the law and to protect Petersen constitutes negligence and makes it liable to Petersen for her damages alleged herein.

40. MarketStar created, maintained, fostered, participated in, and/or ratified a sexually hostile work environment in which discriminatory intimidation, ridicule and insult were so sever and pervasive that it altered the terms and conditions of Petersen's employment.

41. MarketStar failed to establish, monitor and enforce an effective anti-harassment policy, had no clear and effective mechanism in place for reporting sexual harassment, and knowingly or negligently failed to supervise its employees in a manner that would prevent the harassment, intimidation and retaliation Petersen received.

42. The facts described above constitute both a pervasive hostile environment and a severe hostile work environment in violation of Title VII.

43. MarketStar's actions or inactions have directly and proximately caused Petersen substantial past and future economic loss, including medical and counseling expenses, lost wages, damage to her career and professional reputation, extreme humiliation, emotional distress and pain and suffering in an amount to be determined at trial.

44. MarketStar's actions were taken with malice and were wanton, reckless and in knowing disregard of Petersen's legal rights and, as such, renders MarketStar liable for punitive damages in an amount to be determined at trial.

45. Petersen is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII.

## SECOND CAUSE OF ACTION
### Sexual Discrimination in Violation of Title VII

46. Petersen hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

47. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination by an employer against an employee because of the employee's sex.

48. The adverse employment actions taken against Petersen, including terminating her employment were motivated by Petersen's sex.

49. MarketStar's actions have directly and proximately caused Petersen substantial past and future economic loss, including lost wages, damage to her career, humiliation and pain and suffering in an amount to be determined at trial.

50. MarketStar's unlawful conduct toward Petersen in violation of Title VII was done with reckless disregard for her federally protected rights, such that it should be subject to an award of punitive damages.

51. Petersen is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII.

## REQUEST FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial before a jury.

## CONCLUSION & REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a ruling and judgment in Petersen's favor and against MarketStar for all causes of action asserted herein;

2. For all wages, compensation and other economic benefits lost as a result of Defendant's actions and omissions;

3. For all special and general damages available to Plaintiff, including pecuniary and non-pecuniary losses;

4.   For an award of attorney's fees and costs, as allowed by the foregoing claims;

5.   For an award of punitive damages;

6.   For prejudgment and post-judgment interest as allowed by law; and

7.   For such additional and other relief, the court deems just and equitable.

Respectfully submitted this 14th day of August 2020.

   /s/ Michele Anderson-West
Michele Anderson-West
Austin B. Egan
STAVROS LAW P.C.
*Attorneys for Plaintiff*